Good morning, your honors. May it please the court, Anne Peterson for the petitioner Jesswinder Singh. The primary issue in this case is credibility. And substantial evidence compels the conclusion that Mr. Singh provided credible testimony. Each and every one of the immigration judge's credibility findings in this case is an error. The decision is riddled with factual mistakes and speculation based on those alleged inconsistencies that, in fact, do not exist. There are numerous alleged inconsistencies in this case. From the outset, the judge asserts that the declaration and the testimony are inconsistent. That is not so. She raises two examples of this. First, she states that the petitioner did not testify that he was accused of terrorist ties. He, in fact, did so on two occasions in his testimony, both at AR-88 and AR-92. As well, she testifies that he does not attribute his persecution, or the police did not attribute his persecution, to his political involvement with Sharmania Khalid al-Amritsar in his declaration, but he does so. He says, I was told in custody that this is the result of my association against the Congress Party, which the immigration judge, in her opinion, acknowledges is associated with the Khalid al-Badal Party, whom he blamed for his persecution. Additionally, the immigration judge improperly relied on the government's unsubstantiated accusations in reaching her adverse credibility finding. Questions asked by counsel are not evidence. In this case, the I.J. simply adopted the assumption implicit in the cross-examiner's questions when he questioned Mr. Singh about the asylum interview. Mr. Singh did not admit any of those allegations. There is no record of the interview in the record of proceedings, no notes. There is no evidence that there was an interpreter present at that asylum interview. The asylum referral does not say anything about inconsistencies. And the government did not offer the asylum officer as a witness. So there is no evidence to support that those inconsistencies actually exist. In this record. In this record. That is correct. Additionally, the immigration judge points to the concept of implausibility, specifically as to the statement that Mr. Singh made to police when he was stopped at a checkpoint. The immigration judge is insistent that his admission of party membership at the police checkpoint is implausible, is based purely on speculation and conjecture, which is not an adequate basis for adverse credibility findings. The I.J.'s guesses as to what Mr. Singh was likely or unlikely to do are not substantial evidence. And she's not permitted to add her personal conjecture as to Mr. Singh's state of mind or what would be appropriate for him to do. What he did was maybe not the smartest thing to do, but there's nothing to support her conclusion that it's implausible. Kennedy, didn't Mr. Singh admit that he would not state his political coloration to the village police, but for some reason he would to another group of police who were at a checkpoint? He did not admit that he that he would not do that to the village police, but he did say that that was another reason why he felt more comfortable admitting it to these other police. He had a distinction between the types of police. He did draw a distinction between the type of police and, you know, to his definition. But how they would react to political coloration. Right. Well, and he did draw a distinction. What was the reason basis for that? What was the reasonable basis? Well, in the past, he had only been beaten by the village police. He had been stopped on occasions. There were two years intervening between his two arrests. And in the first arrest, it was the village police who had arrested and tortured him, stripped him and beaten him with sticks, whereas then he'd been stopped numerous times between them by police and merely detained. And so it's reasonable for him to believe that if he were to just be honest and obedient to police, as he had been historically with police and all of his police contact, that maybe he would be safe. Unfortunately for him, he was wrong. Let's suppose we agree with you that the adverse credibility finding is defective. Then what? Well, then there's another issue of house persecution, which is also an error. Mr. Singh was arrested on two occasions based on his political opinion, which I'll get to at the nexus in a moment. And he was stripped naked. He was beaten with sticks and kicked on his feet and back, both times. He required medical attention. In the intervening years, he was stopped and harassed by police on multiple occasions. Subsequent to his departure from India, his wife was arrested and questioned about his whereabout and threatened that he would be killed in front of her. So there are new – you know, even as if physical harm is under Chand is persecution, but even if you're not going to accept this doesn't – that that rises to the level of persecution, taken cumulatively, this is persecution. Did the IJ, Judge Marks, did she make an alternative finding that even if he's believable, it didn't rise to the level of persecution? That's correct, Your Honor. So if that's wrong and the adverse credibility finding is wrong, then there's nothing for her to reconsider. We should just send it back under your view of this to say go grant him asylum or just – I guess she has the first crack at determining whether there's a chance of future persecution, right? Yes. She still hasn't ruled on well-founded fear, Your Honor. Okay. What about the Catt claim? Same problem with the Catt claim? She didn't find him credible? Yes. She didn't find him credible, but she also didn't do an analysis of the Catt claim, and credibility isn't required for Catt. So it should be reversed on that ground as well, Your Honor. And I see I have two minutes and 52 minutes or 52 seconds. May I reserve? They're all yours. Thank you. Good morning again, Your Honors. Drew Brinkman on behalf of the Attorney General. I'll just jump right into the grounds for the adverse credibility finding here. I would like the Court to keep in mind this is a highly deferential standard of review that the Court should apply. The first ground was that Singh's testimony was – Mr. Singh's testimony was implausible in light of the country reports. Now, the country reports – Mr. Singh says he was arrested in 2002 and 2004 for supporting the Eqali Dal Amritsar. He says that thousands of others were arrested as well in 2002 for supporting the Eqali Dal Amritsar. The 1996 State Department report describes the counterinsurgency in the Punjab province which occurred between 1984 and 1994. As of 1996 even, this is well before his claim, states that membership in the Eqali Dal is not a ground for anticipating persecution or mistreatment in India. The 2000 Denmark report, there were no major security problems in Punjab since 1995. In 1999, the Eqali Dal Amritsar won two seats in the national parliament. Sikhs in general were not being persecuted. The 2006 United Kingdom report, Sikhs no longer constitute a persecuted group as of 1997. So right away, his claims that all these people, including himself, were being arrested in 2002 seem suspect. Mr. Brinkman, if memory serves, wasn't a Sikh elected president of India? I'm not aware, Your Honor. I'm sorry. And so that's the first ground. This Court has said that implausible country condition – implausible claims – I'm sorry. Let me get the correct wording here. Testimony that is implausible in light of background evidence can support an adverse credibility finding. The second ground, the immigration judge says, well, when he was challenged about what he told the asylum officer, his testimony started falling apart. So the – and even though there's nothing, the asylum officer's interview is not in the record, it's not based on that interview. It's based on what Mr. Singh testified about that interview. But the question was put to him, didn't you tell the asylum officer you were beaten twice rather than once? Is that correct? That's right. And do you maintain that the record shows that he admitted an inconsistency? He says, and I think this is partly where being in the courtroom probably would have helped, but he says, I was beaten, which I read as an implicit admission that, yes, he said that. And then he starts explaining it immediately, saying, I was newly arrived in the United States, so I might have misspoken. No, he didn't. That was what the immigration judge inferred from that testimony. Yes, but what he said was probably quite different. He said I was beaten. He didn't say I was beaten once or twice. He just said I was beaten at 127. It's possible I might have said that I was beaten. How do you tease an inconsistency of once versus twice out of that? Because the DHS attorney's question is, did you tell the asylum officer that you were beaten once on the first night and once on the second night? It's possible I might have said that. Once on the first night and once on the second night. And he says, it's possible I might have said I was beaten. Right. But he doesn't say once on the first night or twice on the second night. Then he continues. Your testimony today is clear that you were not beaten on the second night. Is that correct? He says, I newly arrived, so I might have been confused. So he's already hedging on what he had told the immigration judge. But he doesn't – it's no white and black inconsistency. No, it's an inference that the immigration judge made, which under the – The question is, is the inference justified by the record? Is it compelled by the record? Is the adverse inference compelled by the record? That's the question. I'm sorry. I didn't mean to point. No, that's bad. That's the question. It's not compelled by the record, especially in light of some other inconsistencies as well. They start to piece together. What are the inconsistencies? Well, the second, also regarding the asylum officer. This is all on page 134 of the record. So seeing Mr. Singh originally testifies that he was pushed by the asylum officer at the checkpoint. The DHS attorney says, didn't you tell the asylum officer that you were slapped at the checkpoint? And then Mr. Singh says, well, pushing and slapping are the same thing. Pushing and slapping are not the same thing. He's trying to make his stories into a coherent whole. That's the inference that the immigration judge made there. You mean they hit you with their hands. Right. Whether they push or whether they slap. Right. But a push and a slap or a slap is across the face. An open hand and a push is you push someone away. You can't slap somebody other than the face? You can slap them in the body, but they're different verbs. How do we know what he told the asylum officer? We don't necessarily know, but we know that he's explaining. He seems to accept these inconsistencies. Well, I'm having trouble understanding how we can charge him with an inconsistency between what he told the asylum officer and what he testified to when we don't have a record of what he told the asylum officer. If he had simply denied, I didn't say that to the asylum officer. That's all. Then this wouldn't be an issue the IJA couldn't have made a finding. But he implicitly accepts, maybe I said that, but here's why. I was newly arrived at the time. Actually pushing and slapping mean the same thing. The IJA can start making inferences that this story is not adding up, and that's what happens. So that was another ground. The third ground, in his declaration that he submitted to the court, he wrote that he was targeted by the police because they suspected that he was a Sikh militant. And in his declaration, he says he tried to tell the police that he was an Akali Dal Amritsar supporter. He was not a Sikh militant. So that declaration is 301 and 302 of the record. So in his declaration, he's saying he told the police as an excuse that he was only an Akali Dal Amritsar supporter. Then he's testifying. His entire testimony is, I was persecuted because I was an Akali Dal Amritsar supporter. Two different things. Even though that there's connections between Sikh militants and the Akali Dal Amritsar party, he's saying he tried to convince the police not to harm him because he was only an Akali Dal Amritsar supporter, and then later he's saying that they were harming him precisely because he was an Akali Dal Amritsar supporter. So that's an inconsistency that goes to the heart of his claim. Then there was, when he was stopped at the checkpoint, he immediately volunteers to the police officer. The police officer says, where are you coming from? He says, oh, I'm coming from an Akali Dal Amritsar meeting. When he had testified that he knew or he believed that Akali Dal Amritsar supporters were persecuted in his area. So the immigration judge infers. Why would he say that? It's implausible that he would just volunteer that information. He's lying because he said he told the truth. It's an inference, and I understand someone can be an extreme truth teller, and maybe it's true, but it's a reasonable inference that the immigration judge made, especially in light of all these other things in the record that caused him to question whether he was telling the truth. Then we have an extreme lack of corroborating evidence of anything that happened. He says that he has a friend in the Akali Dal Amritsar party who could have provided an affidavit for him and didn't. Didn't really explain why. This court has said in CEDU that, I believe it's CEDU, if the board has reasons to question the alien's credibility, then if the alien doesn't provide readily available corroborating evidence, that can be an adverse inference towards his credibility. Okay. So those are the grounds. Thank you. Thank you, Mr. Brinkman. Ms. Peterson, you had some time left. Could you please address Mr. Brinkman's first point, that adverse credibility finding is based on the implausibility of this claim of 2002 and 2004 arrests in view that since 1997 there's been no persecution of Sikh political activists? Yeah. I think, yes, Your Honor. I think that that is a really selective reading of the country conditions. The DOS report confirms his testimony that the Indian police are corrupt. And, in fact, all of the reports submitted by the government in this case. The police are corrupt doesn't mean they persecute for political reasons. That's correct, Your Honor. However, all of the government's reports tell stories of political retribution by police in India. Moreover, there are additional reports, including one quoting a letter from the Punjab police director stating that Indian police under influence of money and politics intimidate people on the basis of their political alignments. And that, additionally, the report that the government is referring to is outdated. It predates the time period that we're discussing here. After 2006, the Sikh militants were rescued again? I'm sorry. He was mentioning a 1996 report initially, and also the Danish report. The Danish report was referring to not Akali Dal Amritsar. It's referring to Akali Dal as an umbrella group. And in this case, there are actually various different factions of Akali Dal. And our the Petitioner was being persecuted and targeted by Badal members, who have more political power than Shiremani Akali Dal Amritsar, which is. Do you disagree with Mr. Brinkman that in 1999, this man's party gained two seats in the National Assembly? No, I don't. However, Akali Dal Badal is the party that had a relationship with the Congress Party, and which had more political power. And they are the party members that you see in the National Assembly and in greater force these days. But you do disagree with Mr. Brinkman, this man's party didn't get two seats. Some other party, through their agreement with Congress Party, got two seats. In 1997? 1999. Yes, that's correct, Your Honor. So I'd like to address a couple of other things. You're out of time, so why don't you just conclude, if you would. Okay. Thank you, Your Honor. Ultimately, the record compels a conclusion that given that all of these inconsistencies and ideas of plausibility are flawed, that taken together, they compel reversal. Thank you. Thank you very much, Ms. Peterson. And you too, Mr. Brinkman. The case to start is submitted.
judges: Schroeder, Silverman, Bea